IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


RUPERT MICHAEL ZAMORA,

        Plaintiff,

v.                                             CIV 16-0456 KBM

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

        Defendant.


## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse and

Remand to Agency for Rehearing with Supporting Memorandum (*Doc. 20*), filed

November 30, 2016. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil

Procedure 73(b), the parties have consented to me serving as the presiding judge and

entering final judgment. *Doc. 12*. Having reviewed the parties' submissions, the

applicable law, and the relevant portions of the Administrative Record, the Court will

deny the Motion.

**I.**     **Procedural History**

Plaintiff filed an application with the Social Security Administration for

supplemental security income under Title XVI of the Social Security Act on March 14,

---

[1] Effective January 20, 2017, Nancy A Berryhill became the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A Berryhill is therefore substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

2012, with a protective filing date of February 15, 2012. *AR* at 154, 170.[2] Plaintiff originally alleged a disability onset date of December 1, 2010, due to Bipolar, PTSD, degenerative disks, arthritis, and depression. *AR* at 174. The alleged disability onset date was later amended to February 15, 2012. *See* AR at 29,

The agency denied Plaintiff's claims initially and upon reconsideration, and he requested a hearing. *AR* at 51, 84, 99. After a *de novo* hearing, ALJ Ann Farris ("the ALJ") issued an unfavorable decision on September 11, 2015. *AR* at 11-20. Plaintiff submitted a Request for Review of ALJ Farris' decision to the Appeals Council, which the Council denied on April 1, 2016. *AR* at 1-3. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). The Commissioner must utilize a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 416.920(a)(4); *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

---

[2] Documents 15-1 through 15-18 comprise the sealed Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

At Step One of the process, the ALJ found that Plaintiff has not engaged in substantial gainful activity during the relevant time period. *AR* at 13.[3] At Step Two, she determined that Plaintiff suffers from the severe impairments of "heroin and alcohol addiction; degenerative disc disease; post-traumatic stress disorder ('PTSD'); and antisocial personality disorder." *AR* at 13. At Step Three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the regulatory "listings." *AR* at 13-14.

When a claimant does not meet a listed impairment, the ALJ must determine his residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4). RFC is a multidimensional description of the work-related abilities a plaintiff retains in spite of his medical impairments. 20 C.F.R. § 416.945(a)(1). "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8P, 1996 WL 374184, at *1 (emphasis in original). In this case, the ALJ determined that Plaintiff retains the RFC to:

> Perform light work (lift 20 pounds occasionally and 10 pounds frequently, stand or walk for six hours out of an eight-hour workday, and sit for six hours out of an eight-hour workday) as defined in 20 CFR 416.967(b) except he can balance only occasionally and must avoid hazards such as unprotected heights and dangerous moving machinery. He can have occasional, superficial interaction with co-workers and make simple decisions in an environment with few workplace changes.

*AR* at 15. As Plaintiff has no past relevant work under the regulations, the ALJ skipped Step Four. At Step Five, relying upon the testimony of a vocational expert ("VE"), the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform despite his limitations. Specifically, the ALJ determined that

---

[3] The ALJ went on to note that Plaintiff "has not earned credits towards social security disability since 1983. This poor work history indicates problems with employment – such as incarceration – that are independent of any medical impairments." *AR* at 13.

Plaintiff maintains the RFC to work as a cleaner, marker, or photocopy machine operator. *AR* at 20. Accordingly, the ALJ determined that Plaintiff is not disabled and denied benefits. *AR* at 20.

## II.     Legal Standard

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). However, in making this determination, this Court "cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016) (citation omitted). Additionally, the Tenth Circuit dictates that in reviewing social security appeals, the court should, "indeed must, exercise common sense." *Keyes-Zachary*, 695 F.3d at 1166.

## III.     Analysis

Plaintiff raises only one issue on appeal – wheteher the ALJ erred in formulating his RFC by failing to incorporate certain moderate limitations identified by Paula Hughson, M.D., a psychological consultative examiner. *See Doc. 26* at 1 (citing SSR 96-8p, which provides that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

Dr. Hughson performed a consultative psychiatric evaluation of Plaintiff on June 4, 2012, at the administration's request. *See AR* at 273. At that time, Plaintiff's chief complaint was "I need a little time to get adjusted (after prison), and my back is messed

up." *AR* at 273. After reviewing Plaintiff's history and conducting a mental status examination, Dr. Hughson diagnosed Plaintiff with opiate dependence, Post Traumatic Stress Disorder and Antisocial Personality Disorder. *AR* at 276. Dr. Hughson further provided a statement of opinion of abilities in which she found that Plaintiff is moderately to markedly limited in the ability to interact with the public and moderately limited in the ability to interact with coworkers and supervisors. *AR* at 278.

The ALJ gave Dr. Hughson's opinion "moderate weight." *AR* at 18. In reaching this finding the ALJ compared Dr. Hughson's opinion to that of C. Nadig, Psy.D., who conducted a consultative examination of Plaintiff a year later, on June 7, 2013. *See AR* at 18, 306. In contrast to Dr. Hughson, Dr. Nadig diagnosed Plaintiff only with opioid use disorder and "problems related to release from prison," ruling out PTSD as well as a mood or anxiety disorder. *AR* at 309-10. Dr. Nadig further found that any limitation in Plaintiff's ability to relate to others was "mild" and noted no remarkable limitation on any of Plaintiff's other functional abilities. *AR* at 309.

Given the differences in the two opinions, the ALJ appropriately recognized that "Drs. Hughson and Nadig are clearly not in perfect agreement," but, nonetheless, "some weight [was] given to each of them." *AR* at 18. The ALJ explained:

> Nadig appears to have provided a more in-depth evaluation, administering a test and engaging deeper in the process of elimination. She explains her reservations about diagnosing PTSD in some detail and warrants great weight. That said, her conclusions are tempered by Hughson, who also specializes in the relevant field and did not commit any overt mistakes. Hughson's report is simply more cursory, indicating a little less attention to detail. For this reason, she receives moderate weight, and the residual functional capacity limits the claimant to simple decisions with only occasional social interaction in a stable environment.

*AR* at 18. Thus, the ALJ purported to accept Dr. Hughson's opinion that Plaintiff should be limited to "only occasional social interaction." *Id.*

However, as noted above, the ALJ's RFC formulation limits Plaintiff to only "occasional, superficial interaction with co-workers" *AR* at 15, and as Plaintiff points out, this limitation says nothing about his ability to interact with supervisors and the general public. *See Doc. 20* at 8. Thus, the ALJ appears to have either forgotten to include these limitations in Plaintiff's RFC, or she implicitly rejected that portion of Dr. Hughson's opinion. Either way, Plaintiff argues that the ALJ committed "harmful legal error requiring remand." *Doc. 20* at 9.

The Court disagrees. To the extent that the ALJ discounted Dr. Hughson's opinion, her decision to do so was supported by substantial evidence. Moreover, assuming for the sake of argument that the ALJ erred by neglecting to incorporate the limitations, that error was not harmful in light of the jobs she identified at Step Five.

Dr. Hughson's opinion is considered an "examining medical-source opinion." *Ringgold v. Colvin*, 644 F. App'x 841, 843 (10th Cir. 2016) (unpublished) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012); 20 C.F.R. §§ 404.1527(c)(1); 416.927(c)(1)). Such opinions "may be dismissed or discounted, of course, but that must be based on an evaluation of all of the factors set out in the . . . regulations and the ALJ must provide specific, legitimate reasons for rejecting it." *Id.*; *see also* SSR 96-5P, 1996 WL 374183, at *5. The six factors an ALJ must consider in evaluating such an opinion include:

> (1) the examining relationship between the medical source and the claimant; (2) the treatment relationship between the source; (3) the supportability of the source's findings; (4) the consistency of the source's opinions "with the record as a whole"; (5) the source's status as a

specialist, if applicable; and (6) other factors that tend to support or contradict the opinion.

20 C.F.R. § 416.927(c)(1)-(6). Importantly, "not every factor for weighing opinion evidence will apply in every case." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting SSR 06–03p). Thus, an "ALJ need not explicitly discuss all the factors if his decision is 'sufficiently specific to make clear to any subsequent reviewers the weight he gave to the medical opinion and the reasons for that weight.'" *Rivera v. Colvin*, 629 F. App'x 842, 844 (10th Cir. 2015) (unpublished) (quoting *Oldham*, 509 F.3d at 1258).

In this case, the ALJ clearly favored Dr. Nadig's opinion over Dr. Hughson's, and she discounted Dr. Hughson's opinion insofar as it was inconsistent with Dr. Nadig's and was "simply more cursory" in reaching its conclusions. These reasons are both in accord with case law and the regulations. *See* 20 C.F.R. § 416.927(c)(3) ("Supportability. The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."); *id.* at § 416.927(c)(4) ("Consistency. Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *see also Lankford v. Colvin*, 612 F. App'x 496, 499 (10th Cir. 2015) (stating that an "ALJ may discount a physician's opinion that is inconsistent with other medical evidence from the relevant time period." (citing *Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013)). Accordingly, the ALJ provided sufficient reasons for discounting Dr. Hughson's opinion, and the Court will not reweigh her decision to do so.

More importantly, even if the ALJ erred in failing to include a restriction on interacting with supervisors and the general public in formulating Plaintiff's RFC, any such error is harmless. A reviewing court may find an ALJ's error to be harmless "where based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). While she may have omitted Dr. Hughson's findings that Plaintiff is limited in his ability to interact with supervisors and the general public from Plaintiff's RFC, the ALJ made certain that the jobs she identified at Step Five account for these limitations. This much is plain from the ALJ's questioning of the VE. *See AR* at 48:

> Q    Now, all of these jobs the data things portion of the DOT Code listed eight for the people portion as I understand, that's the least amount of contact with anyone, is that correct?
>
> A    That's correct, it's eight.

*Id.* This colloquy between the ALJ and the VE demonstrates that the jobs the VE identified for Plaintiff involve very little interaction with people, which is consistent with Dr. Hughson's findings.

> According to Appendix B of the Dictionary of Occupational Titles ('DOT'), the fifth number of the nine-digit code reflects the job's relationship to people. . . . The DOT rates the amount of interaction on a scale of 0-8. . . . 8, however, is defined as "Taking Instructions-Helping: Attending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to 'non-learning' helpers." This definition demonstrates that the work requires only limited contact with people.

*Koller v. Berryhill*, No, 15-cv-673-TLW, 2017 WL 1273659, at *4 (N.D. Okla. Mar. 31, 2017). Moreover, under the "People" portion of the DOT job descriptions for the jobs

identified by the VE interaction with people is "Not Significant." *See* DOT 323.687-014, 1991 WL 672783 (Cleaner); DOT 209.587-034, 1991 WL 671802 (Marker); DOT 207.685-014, 1991 WL 671745 (Photocopying–Machine Operator). Accordingly, any error in the ALJ's failure to include Dr. Hughson's limitations is harmless because the ALJ's Step Five findings do not include jobs that would conflict with those limitations.[4]

## IV.    Conclusion

Plaintiff has failed to demonstrate that the ALJ committed harmful, reversible, error in this case.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion to remand (*Doc. 20*) is **denied**.


_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by consent

---

[4] *See Koller*, 2017 WL 1273659, at *4; *see also Lane v. Colvin*, 643 F. App'x 766, 770 (10th Cir. 2016) (unpublished) ("Because there is no actual conflict between a limitation on frequent and prolonged interaction with supervisors and co-workers and the bottling-line attendant job identified by the VE's testimony, any oversight by the ALJ in including this limitation is harmless error."); *Kirkpatrick v. Colvin*, 663 F. App'x 646, 649-50 (10th Cir. 2016) (unpublished) (finding that one of the jobs identified by a VE was not precluded by the claimant's vision limitations and concluding that "even if the ALJ failed to fully account for Kirkpatrick's depth-perception and peripheral-vision limitations, that error is harmless."); *Duncan v. Colvin*, 608 F. App'x 566, 577-78 (10th Cir. 2015) (unpublished) ("We agree that the sedentary hypothetical question to the VE did not include the limitation to 'superficial contact with coworkers, supervisors, and the public.' We conclude the omission does not require reversal, however, because any error was harmless. As we noted in *Hackett*, the full DOT job descriptions for the jobs of call-out operator and surveillance system monitor 'indicate that contact with people is rather limited.' . . . Accordingly, at least two of the three jobs identified by the VE are consistent with the restriction of 'superficial contact with coworkers, supervisors, and the public.'" (citation omitted)).